**STATE of Missouri, Respondent,**

v.

**James DUDLEY, Jr., Appellant.**

**No. WD 49659.**

Missouri Court of Appeals,
Western District.

July 5, 1995.

Pattie Shostak, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David G. Brown, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and SMART and LAURA DENVIR STITH, JJ.

James Dudley, Jr., appeals the order of the Circuit Court of Jackson County denying his section 552.040, RSMo 1986, petition for unconditional release from the custody of the Department of Mental Health.

**I. *ISSUE PRESENTED FOR REVIEW***

Section 552.040 states that unconditional release will be ordered only if the patient

proves that he "does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering him dangerous to the safety of himself or others."

The statute also sets forth six non-exclusive factors for the trial court to consider in determining whether or not the committed person has a mental disease or defect and in determining whether in the reasonable future he is or is likely to be a danger to himself or others. The sixth factor is whether a determination that the committed person is not dangerous to himself or others is dependent on the person's continued use of medication.

The trial judge specifically found below, in his order or at the hearing, that Mr. Dudley still had chronic schizophrenia but that he was not dangerous to himself or others if he took his medication, and that he would continue to take his medication. The judge stated that he would unconditionally release Mr. Dudley unless the fact that Mr. Dudley would have to continue to take medication made him ineligible for release as a matter of law under the statute. The judge found that the statute did preclude Mr. Dudley's unconditional release for this reason.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

On November 22, 1983, Mr. Dudley was charged with one count of first degree robbery, § 569.020, RSMo, and one count of armed criminal action, § 571.015, RSMo.[1] On June 14, 1984, the Circuit Court of Jackson County found Mr. Dudley not guilty by reason of mental disease or defect and remanded Mr. Dudley to the custody of the Department of Mental Health.

Mr. Dudley was confined as an inpatient at the St. Joseph State Hospital until March 20, 1990, when he was granted a conditional release by the Probate Court. The conditional release has been extended through the date of this appeal.

### A. *Statutory and Constitutional Rules Governing Unconditional Release*

The statutory scheme in Missouri provides an avenue by which a criminal defendant who has been acquitted by reason of mental disease or defect and committed to the custody of the Department of Mental Health can petition the court for an unconditional release pursuant to section 552.040. That section places the burden of proof on the committed person to prove by a preponderance of the evidence that he "does not have, and in the reasonable future is not likely to have, a mental disease or defect, rendering him dangerous to the safety of himself or others." § 552.040(8).[2]

The Missouri Supreme Court has held that it is constitutional to place the burden on the committed person to show entitlement to release, rather than on the state to prove the need for continued detention, where, as here, the person seeking release was committed following acquittal of a crime due to mental disease or defect. This is because an acquittal based on mental disease or defect carries with it an inference of continuing mental illness. It is up to the committed person to overcome that inference. *State v. Tooley,* 875 S.W.2d 110, 112 (Mo. banc 1994).[3]

---

1. All statutory references are to RSMo 1986 & Supp 1993 unless otherwise indicated.

2. If the insanity acquittee was acquitted of certain enumerated serious violent crimes, then the burden of proof of entitlement to release changes to a clear and convincing evidence standard. § 552.040.

3. Of course, as *Tooley* recognized, and as the United States Supreme Court has noted, if it is shown or the state acknowledges that the committed person is no longer mentally ill, it cannot detain him or her indefinitely simply because it finds that the committed person is or is likely to be dangerous. Were this not the rule, a person

could be held indefinitely just because they had once committed a crime while insane. *Foucha v. Louisiana,* 504 U.S. 71, 77–78, 112 S.Ct. 1780, 1784, 118 L.Ed.2d 437 (1992). Similar questions have been raised about continued confinement of persons who, while perhaps mentally ill, are not a danger. As one commentator has noted, "to languish indefinitely in treatment programs from which there is little hope of release, forces continued commitment without meaningful treatment, and ignores the fact that many people afflicted with mental illness function successfully in society with the aid of medication." Thomas L. Hafemeister & John Petrila, *Treating the Mentally Disorder Offender,* 21 Fla.St. U.L.Rev. 731, 855 (Winter 1994).

Section 552.040(6) provides that the trial court "shall consider the following factors in addition to any other relevant evidence" in determining whether a person such as Mr. Dudley has shown that he does not have and in the reasonable future is not likely to have a mental disease which renders him dangerous to himself or others:

(1) Whether or not the committed person presently has a mental disease or defect;

(2) The nature of the offenses for which the committed person was committed;

(3) The committed person's behavior while confined in a mental health facility;

(4) The elapsed time between the hearing and the last reported unlawful or dangerous act;

(5) Whether the person has had conditional releases without incident; and

(6) Whether the determination that the committed person is not dangerous to himself or others is dependent on the person's taking drugs, medicine or narcotics.

§ 552.040(6). The trial court should make a determination on the record that the committed person is still suffering from a mental disease or defect before ordering the person to remain institutionalized. *Styles v. State*, 838 S.W.2d 10 (Mo. banc 1992).

### B. *Mr. Dudley's Release Hearing*

On November 3, 1993, the Superintendent of St. Joseph Hospital petitioned the Circuit Court of Jackson County for Mr. Dudley's unconditional release. A hearing on Mr. Dudley's petition for unconditional release was held on January 28, 1994. The psychiatrist who evaluated Mr. Dudley's progress during the conditional release, Donald Simmons, M.D., testified at the hearing. Dr. Simmons testified in favor of granting Mr. Dudley an unconditional release. He testified that Mr. Dudley suffers from chronic schizophrenia which is "ongoing and more or less permanent ..." However, Mr. Dudley's mental illness is controlled by medication in the form of a Prolixin injection every three weeks.

Dr. Simmons testified that it will be necessary for Mr. Dudley to continue with this medication in order to control his mental illness once he is unconditionally released. It was Dr. Simmons' opinion that Mr. Dudley would continue taking his medication on his own. He based this opinion on Mr. Dudley's success during the past three years in keeping his appointments and in taking his medication, stating as follows:

Q. Doctor, should the Court grant an unconditional release to Mr. Dudley here today, what would your opinion be based upon your three years of treating him whether he would continue with treatment and continue with his medication.

A. I'm fairly confident that he would do that from my standpoint. This is kind of what this hinges on really is whether he has the capacity to take responsibility for his own treatment because he is going to need it and if he cannot do that that would be a real bad prognosis, but I think he does have the insight and capacity to do that. I'm fairly confident that he would.

Because he believed that Mr. Dudley would continue with his medication, it was Dr. Simmons' conclusion that Mr. Dudley's mental illness did not render him a danger to the safety of himself or others.[4]

The other evidence adduced at the evidentiary hearing also supported the granting of an unconditional release. This evidence consisted of testimony that Mr. Dudley had been living in an independent apartment from the time of his conditional release on March 20, 1990, to the date of the hearing on January 28, 1994. Mr. Dudley obtained a job the day after his conditional release and was still working at that position as of the date of the hearing. During this time he was also very active in his church and was studying for his GED. Mr. Dudley also has the support of his family.

Mr. Dudley's evidence was uncontradicted by the state. The prosecutor stated on the record, "I'm willing to stipulate [Mr. Dudley] has been conforming and as the doctor said

---

4. The state also stipulated to the previously given testimony of Carol Kimble, Mr. Dudley's forensic case worker, and Edith Dudley, Mr. Dudley's mother. Appellant states that this testimony was supportive of an unconditional release but it is not in the record.

that he could probably do—that he is doing well and is taking the medicine." Counsel for the state further stated that "when I first looked at this based on his records, I didn't have a problem with the unconditional release until reading the statute more closely," at which time counsel concluded that the fact that Mr. Dudley would have to continue to take medication made him ineligible for release.

The judge stated at the hearing that he believed Mr. Dudley would continue taking his medication and that Mr. Dudley met the conditions for unconditional release "unless the fact that he is required to continue to take the medication is just a prohibition" against releasing him. The state argued that taking medication did constitute such a prohibition, and went so far as to say that taking medication made Mr. Dudley ineligible for release.

Following this discussion, the trial judge said that he did not believe that the Petitioner needed to present any additional evidence, because "I'm willing to release Mr. Dudley if I can do it under the statute." He asked for briefing by the parties on that issue, stating "You know, I may just be reading the statute wrong, but it seems to me the way the statute reads that Mr. Dudley is stuck. I don't write these statutes."

On May 3, 1994, the judge issued its order stating:

> There are no credibility issues present in the evidence. Mr. Dudley has a mental disease which is controlled by medication. As long as he takes the medication he is not a danger to himself or others.

The judge thus found that Mr. Dudley was not dangerous to himself or others as long as he took his medication. He nowhere found that Mr. Dudley was or was likely to be dangerous to himself or others. Indeed, the effect of the language he did use was that Mr. Dudley was not and was not likely to be dangerous to himself or others in the reasonable future, as the judge had previously found that Mr. Dudley was likely to continue to take his medication.

> The judge nonetheless went on to state: One of the factors the trial court must consider is: 'Whether the determination that the committed person is not danger-

ous to himself or others is dependent on the person's taking drugs, medicine or narcotics.' § 552.040.6(6), RSMo 1992 Cum. Supp.

The judge then concluded that the evidence failed to meet the minimum required for release under the statute. In support, he cited solely *State v. Ross*, 795 S.W.2d 648 (Mo.App.1990). *Ross* held that where the petitioner still had a mental disease or defect, but it was simply in remission, the trial court did not abuse his discretion in refusing to release the petitioner. We assume that the judge below, by analogy, thought that he was not free to release Mr. Dudley because he found that Mr. Dudley still had a mental disease or defect, even though he believed that disease to be under control by medication, that Mr. Dudley would continue to take that medication, and that when taking the medication Mr. Dudley was not dangerous to himself or others.

Mr. Dudley appeals. He argues that the trial judge's holding constituted an abuse of discretion because the mere fact that Mr. Dudley requires medication to control his condition does not preclude his release where, as here, the judge has found that he will take his medication and that he is not and is not likely to be dangerous to himself or others so long as he does so. We agree.

## III. *THE TRIAL COURT FAILED TO EXERCISE ITS DISCRETION AND WEIGH ALL OF THE STATUTORY FACTORS AND EVIDENCE*

### A. *Standard of Review*

Upon appellate review, the decision of the hearing court will not be reversed unless "there is not substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The trial court is vested with the authority to make the ultimate decision regarding whether the evidence establishes the requisite conditions for release. *State v. Ross*, 795 S.W.2d 648, 650 (Mo.App.1990). The trial court's decision will be reversed where the trial court failed to follow a statu-

tory mandate to consider all relevant factors and evidence and to exercise its discretion in making its determination. *Binkley v. Binkley,* 725 S.W.2d 910, 911–12 (Mo.App.1987).

**B. *The Trial Court Abused its Discretion by Making One of the Factors Set Out in Section 552.040.6 Dispositive***

Section 552.040 specifically states that the court is to make the determination whether to release the applicant based on whether the applicant has shown he "does not have and in the reasonable future is not likely to have, a mental disease or defect, rendering him dangerous to the safety of himself or others." § 552.040(8). This is the ultimate issue for resolution by the court.

The statute then sets out six factors for the trial court to consider in determining whether the above standard has been met.[5] However, none of these factors are made determinative under the statute. Indeed, they are not even exclusive, for the statute explicitly states that the court should also consider "other relevant evidence" in reaching its determination.

The judge below made it quite clear, both at the hearing and in his Order, that Mr. Dudley's release was denied *solely* based on the sixth factor—Mr. Dudley's continued need for medication. The judge thus, in effect held that the failure to meet this factor automatically prohibits unconditional release, without regard either to the other relevant statutory factors, or to whether he believed Mr. Dudley's mental disease was or in the reasonable future was likely to render him dangerous to the safety of himself or others.

■ Previous cases recognize that the trial court commits prejudicial error where it erroneously considers only a single factor or makes a single factor determinative when, in fact, the relevant statute requires consider-

ation of multiple factors in determining whether the statutory standard is met. *Binkley v. Binkley,* 725 S.W.2d 910 (Mo.App. 1987), provides a good example. It involved a division of marital property pursuant to section 452.330(1). Similarly to section 552.040, section 452.330(1) lists four non-exclusive factors to be considered by the court in making a just division of marital property. The trial court divided the marital property solely based on one factor, the husband's marital misconduct. The appellate court held that the trial court abused its discretion by dividing the marital property solely based on one factor without considering the other factors listed in section 452.330(1). *Id.* at 912. *See also Parker v. State,* 836 S.W.2d 469, 472 (Mo.App.1992) (remanded to give trial court opportunity to exercise its discretion where trial court had erroneously been led to believe it had no discretion to act).

■ The same reasoning applies here. In finding that Mr. Dudley's continued need for medication automatically precluded release, the trial court abused its discretion. The statute sets out six factors for consideration by the court; it does state that the presence of any one of those factors prevents release. The court was required to consider all of the factors in deciding whether to grant Mr. Dudley an unconditional release. Ultimately, the only determinative issue was whether Mr. Dudley had shown that in the reasonable future he was not and was not likely to be dangerous to himself or others.

**C. *Proper Application of the Statute In a Case In Which the Person Seeking Release Has A Continuing Need For Medication***

We do not mean to suggest that the trial court could not consider the fact that Mr. Dudley was taking medication as a negative fact in making his decision concerning whether Mr. Dudley is or is likely to be a danger to himself or others. Clearly, the statute makes it a relevant factor. However, the trial judge's statements on the record at the

---

5. As noted earlier, the six statutory factors are:
   (1) Whether or not the committed person presently has a mental disease or defect;
   (2) The nature of the offenses for which the committed person was committed;
   (3) The committed person's behavior while confined in a mental health facility;
   (4) The elapsed time between the hearing and the last reported unlawful or dangerous act;

   (5) Whether the person has had conditional releases without incident; and
   (6) Whether the determination that the committed person is not dangerous to himself or others is dependent on the person's taking drugs, medicine or narcotics.
   § 552.040.6.

hearing and in his order indicate his belief that Mr. Dudley was not dangerous or likely to be dangerous to himself or others so long as he took his medication, and that the trial judge believed that Mr. Dudley was likely to do so.

Indeed, the judge expressly stated on the record that he would find Mr. Dudley qualified for unconditional release if he did not believe that the statute prevented him from doing so where, as here, Mr. Dudley's mental health depended on his continued taking of medication.[6] The judge went so far as to tell counsel that he did not believe that Mr. Dudley needed to present any additional evidence, because "I'm willing to release Mr. Dudley if I can do it under the statute," but that "it seems to me the way the statute reads that Mr. Dudley is stuck. I don't write these statutes."[7]

As we have discussed above, the statute did not require the trial court to deny Mr. Dudley unconditional release simply because Mr. Dudley continued to take medication. If it did, Mr. Dudley and other persons who were once subject to commitment might indeed be forever institutionalized, without regard to whether they in fact had or were likely to have a mental disease or defect which rendered them dangerous to the safety of themselves or others. Such is not the law.

None of the parties have identified any Missouri case which has held that the mere fact that a person is taking medication should prevent their release where, as here, the court finds that the individual is likely to continue taking his medication and that he is not and is not likely to be a danger to himself or others so long as he does so.[8]

We have also reviewed the law of other jurisdictions on this issue. Those cases which have addressed this issue under statutory schemes similar to Missouri's similarly hold that the need for continued medication is not a *per se* bar to an unconditional release. Instead, the proper approach is to weigh all relevant factors, as set forth in section 552.040, including the individual's need to continue on medication, and determine whether under all of the evidence the individual is or in the reasonable future is likely to be dangerous to himself or others.

*Carlisle v. State*, 512 So.2d 150 (Ala.Crim. App.1987), addressed the same issue presented to this Court and reversed the trial court's decision denying an unconditional release solely due to the need for continued medication. Mr. Carlisle was committed when he pled guilty by reason of mental illness to the murder of his brother. As in the instant case, his mental illness of paranoid schizophrenia was controllable as long as he continued to take his medication. The only reservations about his release were that "there were no assurances or guarantees that the appellant would continue taking his medication once he was released." *Id.* at 151.

*Carlisle* held that merely because someone needs medication does not conclusively establish that he/she is dangerous. *Carlisle* explained that the court should focus on the patient's behavior and determine whether "that behavior demonstrates that the patient, if released, would pose a substantial threat of harm to himself or others." *Id.* at 159 (citations omitted). Whether the individual has displayed the ability to continue to take med-

---

**6.** Thus, in his order, the court stated that "[T]here are no credibility issues present in the evidence. Mr. Dudley has a mental disease which is controlled by medication. As long as he takes the medication he is not a danger to himself or others." The judge made it clear that he believed that Mr. Dudley met the conditions for unconditional release "unless the fact that he is required to continue to take the medication is just a prohibition" against releasing him.

**7.** It is not contested that the evidence already adduced was sufficient, if believed, to support a finding that Mr. Dudley was eligible for unconditional release unless the fact that he had to take medication precluded release. Thus, the evidence showed that it has been more than 12 years since Mr. Dudley pled guilty to the underlying crime of robbery, that he had not since

committed a dangerous act, that Mr. Dudley's stay at the mental health facility and the three or more years during his conditional release were without incident, that Mr. Dudley had shown that he could live on his own and be responsible for himself and his medication, and that he had for three years held the same job, lived in his own apartment, worked on his G.E.D., and conducted himself in accordance with the law.

**8.** The trial court erroneously misinterpreted *State v. Ross*, 795 S.W.2d 648 (Mo.App.1990), as holding that the need for medication is a conclusive ground for denying an unconditional release. Rather, in that case the court weighed the evidence and held that evidence consisting of hearsay statements by a psychiatrist that the individual's condition was in remission without more

ication is just *one* aspect of that person's behavior which the court should review in making its determination:

> [W]hether there is an appropriate place for the acquittee to go and whether the acquittee can be trusted to take his or her medication, are relevant to a determination of continued mental illness or dangerousness. For instance, if an acquittee is no longer dangerous only because he or she is on medication or in a structured environment, *then clearly whether he or she will take his or her medication or be in a structured environment after release can and should be considered prior to release* (citations omitted).
>
> However, a mere expectancy that danger-productive behavior might be engaged in does not rise to the level of legal significance when the consequence of such an evaluation is involuntary confinement (citations omitted).

*Id.* at 158 (emphasis added).

*Carlisle* also pointed out that psychiatric diagnosis is not an exact science, but rather one "based on medical 'impressions' drawn from subjective analysis and filtered through the experience of the diagnostician. This process often makes it very difficult for the expert physician to offer definite conclusions about any particular patient." *Id.* at 159 (citations omitted). Therefore, the court could not require absolute guarantees in considering the likelihood that the individual would continue taking his/her medication:

> Given the lack of certainty and the fallibility of psychiatric diagnosis it seems impossible that an expert witness could or would ever give a *guarantee* concerning a mentally ill person. Thus, requiring a guarantee in this particular case imposed a burden of proof on this appellant which he could not meet.

*Id.* at 159–60 (citations omitted). Other courts have reached similar results, and have

were not sufficient to satisfy the burden of proof. The court did not address the issue of whether an unconditional release should be denied solely based on the need for continued medication without the consideration of any other evidence and especially when there is evidence that in all likelihood the individual will continue taking his medication.

9. *See, e.g., People v. Williams,* 198 Cal.App.3d 1476, 244 Cal.Rptr. 429, 433 (1988) ("[i]n both personal and societal terms it is senseless to deny

refused to deny release to a person simply because that person has a chronic condition for which he is likely to need medication indefinitely.[9]

Of course, other cases have recognized, as do we, that the need for medication may preclude release if the evidence causes the judge to be concerned as to whether the individual is likely to continue to take his medication once he is released. Among the factors to be considered are whether the individual has a successful history of taking medication while on conditional release, as Mr. Dudley clearly does, and whether the individual has insurance or other resources which will make the medication affordable for him. It would also be appropriate for the trial court to consider whether the individual has a sufficiently strong internalized commitment to taking the medication that he or she will continue to take it despite what would be a natural temptation to drop the medication when release becomes unconditional and all external accountability controls are dropped. More caution may be reasonable where the medication is particularly expensive, consists of injections rather than pills, has multiple side effects, or presents other particular difficulties.

If these and other matters raise a realistic concern that the individual will not continue to take his medication in the reasonable future, they could lead a judge to be unable to conclude that the individual is not likely to be a danger to himself or others in the reasonable future. Courts have also found the need for extreme caution when the crime previously committed by the party seeking release was murder, for in such a case the risks are immense if an error is made.[10] The Missouri statute similarly imposes a higher burden on those who have committed certain listed, particularly violent, crimes. Those individuals must prove that they qualify for unconditional release under a clear and convincing evidence standard.

persons fully functional on medication their rightful place in the community of their choice"); *Hill v. State,* 358 So.2d 190, 204 (Fla.Dist.Ct.App. 1978) ("we do not conceive that the state can lawfully maintain Hill in absolute and indefinite confinement, after substantial hospitalization has subdued and remitted his illness, for lack of a guaranty that if given liberty he would take his medicine and submit to psychiatric observation").

10. *See, e.g., State v. Johnson,* 156 Ariz. 464, 753 P.2d 154 (1988) (patient had a history of failing

Here, Mr. Dudley was accused of robbery, and his burden of proof is the preponderance of the evidence standard. The evidence at trial was that Mr. Dudley was likely to continue to take his medication, and that he had developed sufficient insight into his need for the medication that "he has the capacity to take responsibility for his own treatment." It further showed that Mr. Dudley's mother would continue to act as his guardian, and thus he would not be without some supervision and support.

It appears, from the record of the hearing and from the trial judge's order, that the judge believed this evidence and believed that Mr. Dudley was otherwise eligible for release because he was not a danger to himself or others, and was not likely to be in the reasonable future. It also appears that only the judge's acceptance of the state's erroneous argument that taking medication precluded release prevented him from releasing Mr. Dudley.

If this is the case, then, on remand the trial judge should order the release of Mr. Dudley, unless events have occurred in the interim which would require a different result. In any event, the court should not deny Mr. Dudley release unless the court finds pursuant to the above discussion that Mr. Dudley has failed to show that he does not have and in the reasonable future is not likely to have a mental disease or defect which renders him dangerous to the safety of himself or others. The fact that Mr. Dudley takes medication is simply one factor for the court to consider in reaching its decision.

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

All concur.

---

to take his medication with the most recent lapse leading to his beating his arthritic wheelchair bound neighbor to death with a tire iron). *Compare State v. Perez*, 648 So.2d 1319 (La.1995) (granting a conditional release where there was evidence that individual could be responsible for taking his own medication), and *State v. Perez*, 563 So.2d 841, 845–46 (La.1990) (earlier decision refusing to release same patient conditionally or unconditionally until he had a history of showing responsibility, including proper use of his medications).