STATE OF CONNECTICUT *v.* DOUGLAS CORR
(AC 24551)

Foti, Flynn and Bishop, Js.

Argued November 30, 2004—officially released March 1, 2005

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (acquittee).

*Julia K. Conlin*, deputy assistant state's attorney, with whom, on the brief, was *Mary M. Galvin*, state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The acquittee,[1] Douglas Corr, appeals from the judgment of the trial court dismissing his application for discharge from the jurisdiction of the psychiatric security review board (board).[2] On appeal, the acquittee claims that the court improperly (1) dismissed his application for discharge and (2) imposed on him the burden of proving, by a preponderance of the evidence, that there was a mechanism in place to provide for continued medication and supervision. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the acquittee's appeal. On April 18, 1989, the acquittee, while driving in the town of Shelton, passed a female walking on a street. The acquittee telephoned the therapist he was to see that evening to cancel his appointment. The acquittee then returned to the area where the female was walking and, upon exiting his vehicle, asked her if she would be willing to "procreate" with him. When the female did not respond, the acquittee pulled the female into a nearby

---

[1] An "acquittee" is "any person found not guilty by reason of mental disease or defect pursuant to [General Statutes §] 53a-13 . . . ." General Statutes § 17a-580 (1).

[2] The psychiatric security review board is an "autonomous body within the Department of Mental Health and Addiction Services for administrative purposes only. . . ." General Statutes § 17a-581 (a). The board is comprised of "(1) [a] psychiatrist experienced with the criminal justice system and not otherwise employed on a permanent basis by the state; (2) a psychologist experienced with the criminal justice system and not otherwise employed on a permanent basis by the state; (3) a person with substantial experience in the process of probation; (4) a member of the general public; (5) an attorney who is a member of the bar of this state; and (6) a member of the general public with substantial experience in victim advocacy." General Statutes § 17a-581 (b).

wooded area and attempted to sexually assault her. The acquittee's attempt to sexually assault the female was thwarted by several good Samaritans. The acquittee subsequently was charged with attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-70 (a), and kidnapping in the first degree in violation of General Statutes § 53a-92.

On November 21, 1989, the acquittee was found not guilty by reason of mental disease or defect pursuant to General Statutes § 53a-13.[3] The acquittee then was committed to the custody of the board for a period not to exceed twenty years. On February 28, 1992, the board granted the acquittee's request for a conditional release.

On December 16, 2002, pursuant to General Statutes §§ 17a-593 (a)[4] and 17a-580 (11),[5] the acquittee applied for a discharge from the jurisdiction of the board. The board held a hearing on the acquittee's application for discharge on March 7, 2003. Following the hearing, the board issued a report recommending to the court that the acquittee be discharged from its jurisdiction. Pursuant to § 17a-593 (f),[6] the court began a hearing on the

---

[3] General Statutes § 53a-13 (a) provides: "In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law."

[4] General Statutes § 17a-593 (a) provides in relevant part: "The board . . . may recommend to the court the discharge of the acquittee from custody or the acquittee may apply directly to the court for discharge from custody. . . . An acquittee may apply for discharge not more than once every six months and no sooner than six months after the initial board hearing held pursuant to section 17a-583."

[5] General Statutes § 17a-580 (11) provides: " 'Person who should be discharged' means an acquittee who does not have psychiatric disabilities or is not mentally retarded to the extent that his discharge would constitute a danger to himself or others . . . ."

[6] General Statutes § 17a-593 (f) provides in relevant part: "After receipt of the board's report and any separate examination reports, the court shall promptly commence a hearing on the recommendation . . . for discharge . . . . At the hearing, the acquittee shall have the burden of proving by a preponderance of the evidence that the acquittee is a person who should be discharged."

board's recommendation on June 12, 2003. Following the hearing, the court issued its memorandum of decision dismissing the acquittee's application for discharge. This appeal followed. Additional facts will be set forth as necessary.

I

The acquittee claims that the court improperly dismissed his application for discharge "because there is no evidence supporting the court's conclusion that [he] presents a danger to [himself] or others." We disagree.

"At the outset, we review briefly the statutory procedure applicable to an application for discharge from the jurisdiction of the board pursuant to § 17a-593. After an acquittee has applied for discharge from the board's jurisdiction and the board, in accordance with the requirement of § 17a-593 (d), has filed its report regarding whether the acquittee should be discharged, the trial court must hold a hearing on the application, at which the acquittee bears the burden of proving that he or she is 'a person who should be discharged.' General Statutes § 17a-593 (f). After the hearing, the court, 'considering that its primary concern is the protection of society,' must make a finding as to whether the acquittee is a person who should be discharged. General Statutes § 17a-593 (g). The term '[p]erson who should be discharged' is defined as 'an acquittee who does not have psychiatric disabilities . . . to the extent that his discharge would constitute a danger to himself or others . . . .' General Statutes § 17a-580 (11)." *State* v. *March*, 265 Conn. 697, 705, 830 A.2d 212 (2003).

The acquittee does not contest that he is a person who suffers from a psychiatric disability. The acquittee's claim rests solely on whether the court properly found that he failed to meet his burden of proving that he is a person who should be discharged.

"The determination as to whether an acquittee is currently mentally ill to the extent that he would pose a danger to himself or the community if discharged is a question of fact and, therefore, our review of this finding is governed by the clearly erroneous standard." *State* v. *Jacob*, 69 Conn. App. 666, 680, 798 A.2d 974 (2002). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *State* v. *March*, supra, 265 Conn. 711.

In its memorandum of decision, the court initially noted that it was not disputed that the acquittee suffers from schizophrenia, paranoid type, in remission. The court's memorandum of decision then stated that according to the testimony from both witnesses at the discharge hearing, Peter M. Zeman, a board certified forensic psychiatrist with the Institute of Living Medical Group, P.C., and the acquittee's treating psychiatrist since 1991, and Charles Dike, a psychiatrist at the Whiting forensic division of the Connecticut Valley Hospital, the acquittee required medication to control his symptoms and that if the acquittee did not take the required medication, it was highly likely that he would pose a danger to himself or others. The court, while acknowledging that both Zeman and Dike testified that the acquittee would not be a danger to himself or others if he were discharged from the board's jurisdiction, recognized that their assessment of the likelihood of the acquittee's being a danger to himself or to others was contingent on the acquittee's taking his medication. Although the acquittee was medication compliant while under the board's supervision, the court noted that if it were to discharge him from the board's jurisdiction,

continuation of his medication regimen would be on a strictly voluntary basis.

The court also noted that the acquittee had a long history of mental illness and was diagnosed as paranoid schizophrenic on September 18, 1989. In reaching its decision to dismiss the discharge application, the court considered the violent nature of the underlying crime, which was precipitated by the acquittee's mental illness. While acknowledging the progress that the acquittee had made while under the board's jurisdiction, the court, noting the priority it must give to the public safety ramifications of releasing him, stated that it was unclear whether he would "continue to show the same progress after being discharged from the [board's] supervision."

The court's memorandum of decision concluded: "In addition to its reliance on the expert testimony of the witnesses, the court has considered the entire record, including the acquittee's psychiatric history, which shows significant progress through treatment; his past diagnosis of an Axis I psychotic disorder, alcohol abuse; Axis II personality disorder with schizotypal disorders; his present diagnosis of schizophrenia, paranoid type, in remission; his lack of violent behavior for thirteen years; the nature of and circumstances surrounding his criminal conduct in the 1989 arrest for kidnapping in the first degree and attempted sexual assault in the first degree; his need for continued medication; and the likelihood of supervision upon his release from the [board's] jurisdiction.

"The court finds that the acquittee has not proven by a preponderance of the evidence that there is in place a mechanism to provide for the continuation of the required medication or any prospect for supervision if the acquittee is released from supervision. The undisputed testimony is that the determination that [the acquittee] is not a danger to himself or the community is

predicated on his continuing his regimen of medication. The court may consider the need for continued medication and therapy, and the prospects for supervision in its determination.

"Because this court's primary concern is the protection of society and because the acquittee has failed to meet his burden of proving that he is a person who should be discharged at this time, [the acquittee's] application for a discharge from the [board] is dismissed."

The acquittee claims that the court's conclusion that he "presents a danger to himself or others is not supported by any evidence in the record and is therefore clearly erroneous." The crux of the acquittee's claim is that because all of the evidence before the court indicated that as long as he took his medication, he was not dangerous to himself or others, and that all of the evidence indicated that he was medication compliant while on conditional release, the court could not have found that he would be dangerous to himself or others upon release from the board's jurisdiction. In support of his claim, the acquittee relies on the board's recommendation to the court that he should be discharged from the board's jurisdiction because he is no longer a danger to himself or others, and the testimony of Zeman and Dike before the court at the discharge hearing that he should be discharged from the board's jurisdiction because, as long as he was taking his medication, he was not a danger to himself or to others.

Although the acquittee correctly characterizes the testimony of the witnesses at the discharge hearing and the board's recommendation, the court was not bound by that evidence. "Although a trial court may choose to attach special weight to the testimony of medical experts at a hearing to determine mental status, the ultimate determination of mental illness and dangerousness is a legal decision. . . . Partly because definitions

of dangerousness are necessarily vague . . . and partly because there are no psychological or physical signs or symptoms which can be reliably used to discriminate between the potentially dangerous and the harmless individual . . . psychiatric predictions of future dangerousness are tentative at best and are frequently conceded, even within the profession, to be unreliable. . . . Consequently, both the American Psychiatric Association . . . and the American Bar Association . . . have cautioned against the unfettered reliance in the criminal justice context on expert psychiatric predictions of future dangerousness as a predicate to the release from confinement of persons who have been adjudged guilty of, but not criminally responsible for, a criminal offense.

"In addition, the goals of a treating psychiatrist frequently conflict with the goals of the criminal justice system. . . . While the psychiatrist must be concerned primarily with therapeutic goals, the court must give priority to the public safety ramifications of releasing from confinement an individual who has already shown a propensity for violence. As a result, the determination of dangerousness in the context of a mental status hearing reflects a societal rather than a medical judgment, in which the rights and needs of the [acquittee] must be balanced against the security interests of society. . . . The awesome task of weighing these two interests and arriving at a decision concerning release rests finally with the trial court. . . .

"Although psychiatric testimony as to the [acquittee's] condition may form an important part of the trial court's ultimate determination, the court is not bound by this evidence. . . . It may, in its discretion, accept all, part, or none of the experts' testimony." (Citations omitted; internal quotation marks omitted.) *State* v. *Putnoki*, 200 Conn. 208, 219–21, 510 A.2d 1329 (1986).

The acquittee's claim on appeal challenges a single finding by the court: "The court finds that the acquittee has not proven by a preponderance of the evidence that there is in place a mechanism to provide for the continuation of the required medication or any prospect for supervision if the acquittee is released from supervision." The acquittee does not challenge the court's findings as they relate to his current diagnosis, the nature of the underlying crime or the causal connection between his mental illness and the underlying crime. Although there was evidence presented that if the acquittee remained on his medication, he would not be dangerous to himself or others, when a court is making the determination of whether an individual is a person who should be discharged, the court is to look at the *entire* record before it, not simply the testimony of the medical personnel or the board's recommendation. "In reaching its difficult decision [as to whether an individual is dangerous], the court may and should consider the entire record available to it, including the [acquittee's] history of mental illness, his present and past diagnoses, his past violent behavior, the nature of the offense for which he was prosecuted, the need for continued medication and therapy, and the prospects for supervision if released." *State* v. *Putnoki*, supra, 200 Conn. 221. The testimony of the medical experts or the board's recommendation is not dispositive.

In reaching its decision not to discharge the acquittee, the court looked at the record in its entirety. The court looked at the uncontested fact that the acquittee suffered from a mental illness, albeit in remission. The court also considered the fact that the acquittee's mental illness led to the underlying crime, the violent nature of the underlying crime and the fact that the acquittee needed continued medication to ensure that he would not be a danger to himself or to others.

Looking at the record in its entirety, we conclude that the court's decision that the acquittee failed to meet his burden of proving that he is a person who should be discharged was not clearly erroneous. There was evidence in the record to support each of the court's findings of fact, and we are not left with the definite and firm conviction that an error has been committed. See *State* v. *March,* supra, 265 Conn. 711. The undisputed testimony before the court was that the acquittee has suffered from a mental illness for a significant period of time, having been first diagnosed in 1989 with paranoid schizophrenia. On April 18, 1989, the acquittee approached a female walking on a street and, after dragging her into a wooded area, attempted to sexually assault her. With the help of medication, the acquittee's mental illness is in remission. Although the medical experts at trial testified that it was their opinion that the acquittee should be released from the board's jurisdiction and that he was no longer dangerous, their testimony was conditioned on the acquittee being medication compliant. Were the acquittee to stop taking his medication, however, the experts were in agreement that there was a high likelihood that the acquittee would become dangerous to himself or others. Although the acquittee was medication compliant while under the board's jurisdiction, if the court were to release the acquittee, his medication compliance would be unsupervised and strictly voluntary. Dike testified that in his discussions with the acquittee, the acquittee indicated to him that one of the reasons that he has been compliant in taking his medication was because he knew that if he was not compliant, he would be returned to Connecticut Valley Hospital. If the court released the acquittee from the board's jurisdiction, the acquittee's reason for taking his medication would be removed. Dike also testified that the acquittee had voiced his concern about a side effect of the medication that he

was taking.[7] If the court released the acquittee from the board's jurisdiction, the acquittee would be free to stop using his medication.

Although there was evidence that if the court released the acquittee from the board's jurisdiction, the acquittee *could* continue to receive treatment from Zeman and the Capitol Region Mental Health Center, there was no evidence that the acquittee *would* continue to seek such treatment. Furthermore, although there was testimony that the acquittee's family had been supportive of him, nobody in the family testified at the hearing, and there was no testimony as to what support the family would provide to him if he were released from the board's jurisdiction. Contrary to the acquittee's assertion that the court was seeking a guarantee that he would continue to take the medication he was required to take to prevent a relapse, the court sought only some means to ensure that he would take the medication. The court was not required to accept the testimony of Zeman and Dike that they "thought" the acquittee would continue to comply with the medication regimen he followed while under the board's supervision.

We recognize the significant progress the acquittee has made since being committed to the board's jurisdiction. The court heard testimony that the acquittee has been on conditional release since 1991. Since that time, the acquittee has lived in the community without incident. He holds a job and has been attending school. The burden, however, was on the acquittee to prove that he is a person who should be discharged. In making its determination on whether the acquittee's release from the board's jurisdiction would constitute a danger to himself or others, the court looked at the record in

---

[7] The acquittee was taking Trilafon to control his paranoid schizophrenia. Dike testified that a potential side effect from taking Trilafon was dyskinesia. According to Zeman, dyskinesia causes facial tics.

its entirety and was not bound by the testimony of the medical experts or the board's recommendation.

In support of his claim, the acquittee relies on a series of cases from other jurisdictions. The acquittee's reliance on those cases, however, is misplaced.

The acquittee first relies on the opinion of the United States Court of Appeals for the Sixth Circuit in *Levine* v. *Torvik*, 986 F.2d 1506 (6th Cir.), cert. denied, 509 U.S. 907, 113 S. Ct. 3001, 125 L. Ed. 2d 694 (1993). In *Levine*, the acquittee was found not guilty, following an Ohio state court prosecution, by reason of insanity of aggravated burglary, extortion, kidnapping, attempt to commit murder and aggravated murder, and was committed to the custody of the Ohio department of mental health. Id., 1509. The acquittee subsequently underwent several commitment hearings to evaluate his condition. Id., 1510. In September, 1983, the facility in which the acquittee was held notified the state court that the acquittee was no longer in need of hospitalization. Id. Thereafter, a hearing was held, and the state court found that the acquittee was still mentally ill and in need of hospitalization. Id. The court's decision was affirmed by the Ohio Court of Appeals. Id. The acquittee then filed a petition in the United States District Court for the Southern District of Ohio for a writ of habeas corpus. Id. A magistrate judge recommended that the District Court issue a writ ordering a conditional discharge, finding that there was insufficient evidence in 1988 to conclude that the acquittee was mentally ill. Id., 1510–11. The District Court concurred with the magistrate judge's recommendation and ordered the acquittee's release. Id., 1511. On appeal before the Sixth Circuit, the state of Ohio argued that the District Court improperly concluded that there was insufficient evidence produced at the hearing to support the acquittee's commitment. Id., 1511–12. The Sixth Circuit affirmed the judgment of the District Court, concluding that there

was no evidence to support the court's finding that the acquittee was currently mentally ill and dangerous. Id., 1514.

In *Levine*, all of the evidence demonstrated that the acquittee was no longer mentally ill or dangerous at the time of the discharge hearing. The state court, in determining that the acquittee was currently mentally ill, dangerous and in need of hospitalization, based its conclusion on the fact that he was once diagnosed as having schizophrenia, an incurable disease. Id., 1514. According to that court's determination, once an individual is determined to be mentally ill, he would never be able to be released because the illness is incurable. Id. In the present case, rather than basing its decision on a past diagnosis, the court looked at the record in its entirety and concluded that the acquittee should not be discharged from the board's jurisdiction. Furthermore, unlike the situation in *Levine*, in which the acquittee did not require the use of medication to control his illness, in the present case, the uncontroverted testimony at the hearing was that if the acquittee stopped using his medication, he would be a danger to himself or to others.

The acquittee next relies on the decision of the Supreme Court of Minnesota in *Warner* v. *State*, 309 Minn. 333, 244 N.W.2d 640 (1976). In *Warner*, the petitioner sought her conditional release from the state hospital in which she was confined after being acquitted of first degree murder on the ground of insanity. Id., 334. Following a hearing, the trial court denied the petition for release, finding that she had not proved by a preponderance of the evidence that she would not be a danger to herself or to others if released. Id. On appeal, the Minnesota Supreme Court reversed the judgment of the trial court because the trial court required the petitioner to prove her recovery with the " 'unquali-

fied assurance that no one will be endangered' " upon her release. Id., 335.

In *Warner*, the Minnesota Supreme Court held that the trial court "was not at liberty to substitute its non-professional prognosis for that of the medically trained witnesses who were of a different view" and that because all of the physicians at the hearing recommended that the petitioner be released from the hospital, the question of her release became a medical rather than legal question. Id., 339. As we have noted, the determination in Connecticut of whether to release an acquittee is a legal question, and the court must look at the record in its entirety in making its decision and not simply rely on the testimony of the medical witnesses. *State* v. *Putnoki*, supra, 200 Conn. 219–21.

The acquittee next relies on *State* v. *Dudley*, 903 S.W.2d 581 (Mo. App. 1995), and *Jensen* v. *State*, 926 S.W.2d 925 (Mo. App. 1996). In *Dudley*, the acquittee was found not guilty by reason of mental disease or defect of robbery in the first degree. *State* v. *Dudley*, supra, 582. In *Jensen*, the acquittee pleaded not guilty by reason of mental disease or defect to attempt to commit robbery in the first degree. *Jensen* v. *State*, supra, 925. Subsequently, each acquittee sought an unconditional release. Id.; *State* v. *Dudley*, supra, 583. Under the statutory scheme in Missouri, the trial court was to consider six nonexclusive factors in determining whether it was reasonably likely that the acquittee would pose a danger to himself or others if unconditionally released.[8] *Jensen* v. *State*, supra, 926; *State* v. *Dud-*

---

[8] "Section 552.040 (6) [of the Missouri Revised Statutes] provides that the trial court 'shall consider the following factors in addition to any other relevant evidence' in determining whether a person such as [the acquittee] has shown that he does not have and in the reasonable future is not likely to have a mental disease which renders him dangerous to himself or others: (1) Whether or not the committed person presently has a mental disease or defect; (2) The nature of the offenses for which the committed person was committed; (3) The committed person's behavior while confined in a mental health facility; (4) The elapsed time between the hearing and the

*ley*, supra, 583. Following the release hearing of each acquittee, each respective trial court found that the acquittee was not dangerous to himself or others so long as he took his medication. *Jensen* v. *State*, supra, 928; *State* v. *Dudley*, supra, 584. The courts, however, denied each acquittee's petition for release because, under their interpretations of the statute, if the determination of whether an acquittee is dangerous or not is dependent on the taking of medication, the court is not permitted to release the acquittee. *Jensen* v. *State*, supra, 928; *State* v. *Dudley*, supra, 584. On appeal, the courts were found to have abused their discretion by making a single factor dispositive, rather than looking at the entire record. *Jensen* v. *State*, supra, 928; *State* v. *Dudley*, supra, 585.

Unlike the situations in *Dudley* and *Jensen*, in which the courts found one factor dispositive, the court in the present case specifically stated that its decision was based on a review of the entire record. The court looked at all of the factors set forth by our Supreme Court in *Putnoki* and concluded that the acquittee had failed to meet his burden of proving that he is a person who should be discharged.

Finally, the acquittee relies on *Carlisle* v. *State*, 512 So. 2d 150 (Ala. Crim. App. 1987). In *Carlisle*, the petitioner entered a plea of not guilty by reason of insanity to murder and was committed to the custody of the department of mental health. Id., 151. Subsequently, the petitioner filed a petition for a writ of habeas corpus, seeking his release. Id. Following a hearing, the habeas court denied the petition. Id. On appeal, the Court of Criminal Appeals of Alabama held that it was improper

last reported unlawful or dangerous act; (5) Whether the person has had conditional releases without incident; and (6) Whether the determination that the committed person is not dangerous to himself or others is dependent on the person's taking drugs, medicine or narcotics." *State* v. *Dudley*, supra, 903 S.W.2d 583.

for the trial court to deny the petition because "none of the experts could *guarantee* that the [petitioner] would *remain on medication* and would *seek treatment as an outpatient.*" (Emphasis in original.) Id., 159. The court's decision was based, in part, on the medical testimony that if the petitioner quit taking his medication, there was only a *possibility* that he would become psychotic again and that if he did become psychotic, he *might* become violent. Id., 160. The court found that the *mere possibility* that the petitioner could become dangerous was "too tenuous to sustain a finding of dangerousness." Id. Conversely, in the present case, all of the testimony indicated that there was a high likelihood that the acquittee would become dangerous to himself or to others if he stopped taking his medication. Accordingly, the court's dismissal of the acquittee's application for discharge was not clearly erroneous.

## II

The acquittee next claims that the court improperly imposed on him the burden of proving, by a preponderance of the evidence, that there was a mechanism in place to provide for continued medication and supervision if he were released from the board's jurisdiction. We disagree.

It is the acquittee's claim that the court's statement that he had not proven "by a preponderance of the evidence that there is in place a mechanism to provide for the continuation of the required medication or any prospect for supervision if the acquittee is released from supervision" improperly transformed the illustrative factors set forth in *State* v. *Putnoki,* supra, 200 Conn. 221, into "dispositive factors that the acquittee must prove by a preponderance of the evidence." In support of his claim, the acquittee relies on *State* v.

*Dudley*, supra, 903 S.W.2d 581. The acquittee's reliance on *Dudley* is misplaced.

As we stated previously, in *Dudley*, the Court of Appeals for the Western District of Missouri reversed the judgment of the trial court because, rather than considering the entire record before it, the trial court made a single factor dispositive in its decision. Conversely, in the present case, the court specifically stated that its decision was based on the entire record. The court then went on to discuss each of the factors our Supreme Court mentioned in *Putnoki*. It was only after addressing the *Putnoki* factors that the court dismissed the acquittee's petition. Unlike *Dudley*, the record does not support the acquittee's contention that the court made a single factor dispositive in its decision.

It was the acquittee's burden to prove that if he were released from the board's jurisdiction, he would not be a danger to himself or others. It was not disputed at the hearing that as long as the acquittee took his medication, he would not be a danger to himself or others if he were released from the board's jurisdiction. If, however, the acquittee did not take the medication, it was highly likely that he would be dangerous to himself or others. Accordingly, it was appropriate for the court, in its determination of whether to release the acquittee, to consider whether there was a mechanism to provide for continued medication and supervision.

The judgment is affirmed.

In this opinion the other judges concurred.