## DOUGLAS R. DANIELS ET AL. *v.* HONORABLE JON M. ALANDER
### (SC 17002)

Sullivan, C. J., and Borden, Katz, Vertefeuille and Zarella, Js.

Argued February 9—officially released April 6, 2004

*Kenneth A. Votre,* for the plaintiff in error Dennis Driscoll.

*Gregory T. D'Auria,* associate attorney general, with whom were *Karla A. Turekian,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the defendant in error.

*Opinion*

KATZ, J. This case is before us, pursuant to our grant of certification,[1] from the judgment of the Appellate

---

[1] We granted certification limited to the following issue: "Did the Appellate Court properly conclude that an attorney violates rule 3.3 (a) (1) and (d) of the Rules of Professional Conduct by not correcting or supplementing statements made to the court by another attorney?" *Daniels* v. *Alander,* 264 Conn. 901, 823 A.2d 1219 (2003).

Court dismissing a writ of error brought by the plaintiff in error Dennis Driscoll (plaintiff), who is a member of the bar of this state.[2] *Daniels* v. *Alander*, 75 Conn. App. 864, 818 A.2d 106 (2003). The plaintiff claims that the defendant in error, Honorable Jon M. Alander (trial court), improperly reprimanded him for having violated subsections (a) (1) and (d) of rule 3.3 of the Rules of Professional Conduct[3] during a proceeding in the Superior Court. In his writ of error, the plaintiff claimed that: (1) the evidence did not support the trial court's factual findings and that its legal conclusions were improper; and (2) the trial court violated the plaintiff's due process rights by failing to give him adequate notice of the purpose of the misconduct hearing at which the trial court determined that the plaintiff had violated rule 3.3. Id., 866. The Appellate Court dismissed the writ of error. Id., 883. On appeal to this court, the plaintiff claims that his failure to correct falsehoods made by another attorney during a court proceeding cannot form the basis of the disciplinary action taken against him. We disagree.

The following procedural history, as set forth by the Appellate Court, is relevant to the plaintiff's claims on

[2] Douglas R. Daniels, another member of the Connecticut bar, also was named as a plaintiff in error in the writ, which was brought to this court pursuant to Practice Book § 72-1 and, thereafter, was transferred to the Appellate Court pursuant to Practice Book § 65-1. The trial court had issued a reprimand against both the plaintiff and Daniels, finding that they had violated rule 3.3 (a) (1) and (d) of the Rules or Professional Conduct. Although the Appellate Court dismissed the writ as to both the plaintiff and Daniels following its determination that the trial court's reprimand was proper; *Daniels* v. *Alander*, 75 Conn. App. 864, 818 A.2d 106 (2003); Daniels did not seek certification and therefore does not join in this appeal. Accordingly, we refer herein to Daniels by name and references to the plaintiff are to Driscoll only.

[3] Rule 3.3 of the Rules of Professional Conduct provides in relevant part: "(a) A lawyer shall not knowingly:

"(1) Make a false statement of material fact or law to a tribunal . . . .

"(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse."

appeal. "On January 16, 2001, [Douglas R. Daniels and the plaintiff], both of whom were practicing law in Daniels' law firm, filed an ex parte application for temporary custody and relief from abuse on behalf of Ines Montalvo. [The trial court] conducted an ex parte hearing on the matter on that same date. The application sought an order awarding Montalvo temporary custody of her two minor children as well as an order restraining the children's father, Felipe Nieves, from threatening or assaulting the children or entering Montalvo's Connecticut residence. The application alleged that the children had been abused physically by Nieves and that they feared returning to his care in New Jersey. See *Montalvo* v. *Nieves*, Superior Court, judicial district of New Haven, Docket No. 447041 (April 9, 2001) (29 Conn. L. Rptr. 352).

"The application also alleged that an action was pending in the New Jersey Superior Court to resolve outstanding issues of custody and visitation. During the hearing on Montalvo's application, Daniels indicated that Montalvo had retained legal representation in New Jersey, that a full trial on the issue of the children's custody had taken place in the New Jersey Superior Court and that Montalvo was awaiting the decision in that matter. Nonetheless, Daniels argued on behalf of Montalvo that apart from the pending New Jersey matter, judicial intervention was warranted to protect the children from an immediate threat from Nieves.

"At the [January 16, 2001] hearing, the [trial] court inquired directly of Montalvo and Daniels as to why it should issue the order. Central to the court's line of inquiry was why Montalvo did not file her application before the Superior Court in New Jersey, which already had conducted a hearing on the issue of the children's

custody.[4] Montalvo testified that she did not want to file the emergency application in New Jersey because she feared that it would endanger the immediate physical safety of the children. The [trial] court inquired directly of Daniels as to why he chose to pursue the application in Connecticut rather than to pursue it before the New Jersey trial judge who had presided over the custody trial, the Honorable John A. Peterson, Jr. In response to the [trial] court's questioning, Daniels represented that his colleague, [the plaintiff], 'spoke to [Veronica Davis, Montalvo's] counsel in New Jersey and it was her opinion that we should not [pursue the emergency custody application] in New Jersey for a number of reasons, none of which I think are flattering to the judiciary there, but we were relying on that.'

"[The trial court] recessed the hearing on the application and spoke via telephone with Judge Peterson in New Jersey. Judge Peterson agreed to conduct a hearing on Montalvo's application for temporary emergency custody on January 19, 2001, and [the trial court] issued a temporary emergency order awarding Montalvo custody of the children until that time. [The trial court] noted that both [it] and Judge Peterson believed that New Jersey was the appropriate forum in which to resolve the matter.

"After the [January 16] hearing, [the trial court] received a letter from . . . Davis, the attorney who was representing Montalvo in the custody proceeding in New Jersey. Davis informed the court that she had reviewed the transcript of proceedings of January 16, 2001, and that some of the representations made by Daniels during the hearing were false. By means of a

---

[4] The trial court was attempting to determine whether Connecticut had jurisdiction over the matter, and if so, whether it nevertheless should decline to exercise that jurisdiction, pursuant to General Statutes §§ 46b-115n and 46b-115q; see footnotes 7 and 8 of this opinion; in light of the fact that a decision in a custody and visitation proceeding was pending in New Jersey.

letter dated February 5, 2001, [the trial court] informed Davis, as well as the [plaintiff and Daniels], that [it] wanted to conduct a hearing in regard to Davis' allegations and that such hearing would enable [it] to determine if further action was warranted.

"On March 16, 2001, the [trial] court conducted a hearing related to Davis' allegations. Davis testified that Daniels had misrepresented her opinion about bringing the application before Judge Peterson in New Jersey. The court also heard testimonial evidence from Daniels, [the plaintiff] and Montalvo." *Daniels* v. *Alander*, supra, 75 Conn. App. 866–68. At the March 16 hearing, Davis testified that she had spoken to Montalvo several times during the week leading up to the January 16, 2001 hearing, and had advised her that New Jersey had jurisdiction to determine any issues that might arise relating to the custody of her children, and that, if she wanted to pursue any further action to gain temporary custody of them, she should do so in New Jersey and not in Connecticut. Davis testified that she had her associate prepare an emergency temporary custody application that she intended to file in New Jersey on January 16, 2001, the same day that Daniels and the plaintiff filed their ex parte application in Connecticut. Davis further testified that she had spoken to the plaintiff before January 16, 2001, and had advised him that she was prepared to proceed on Montalvo's behalf in New Jersey. After the hearing on January 16, 2001, Davis had a conversation with Montalvo about why she had pursued the action in Connecticut and Montalvo told her that it had been upon the advice of her Connecticut counsel.

During the March 16, 2001 hearing, the plaintiff testified that he had had a conversation with Davis on January 15, 2001, during which she requested that he not proceed in Connecticut. In that same conversation, the plaintiff had asked Davis if she intended on taking action in New Jersey based on Montalvo's allegations

and, according to the plaintiff, Davis responded that she did not because she was concerned that any such further action might "anger the judge and . . . compromise the outcome of the custody trial that had just taken place." According to the plaintiff, Davis also related her advice to Montalvo that she should not proceed in New Jersey with such a motion. The plaintiff denied that Davis had told him that she had prepared a show cause motion in New Jersey or was otherwise prepared to proceed in New Jersey on January 16, 2001. He did admit, however, that Davis had told him that she did not believe the action for temporary custody should be brought at all—in New Jersey or Connecticut. Montalvo also testified at the March 16 hearing and confirmed that Davis had told her not to proceed at all, but that if she were to go to court based on an emergency situation, she should do so in New Jersey and not in Connecticut.

Thereafter, on April 9, 2001, the trial court issued its decision concluding that the plaintiff and Daniels had violated subsections (a) (1) and (d) of rule 3.3 of the Rules of Professional Conduct. Critical to the trial court's decision were several findings of fact relating to representations made at the January 16, 2001 hearing, as well as testimony given at the March 16, 2001 hearing. Specifically, after sifting through the conflicting evidence presented at the latter hearing, the trial court found the following facts: "Davis [had] expressly told [the plaintiff] on January 15, 2001, that she was prepared to file an emergency petition for temporary custody on [Montalvo's] behalf in New Jersey. [The plaintiff] did not take . . . Davis up on her offer because he believed that Connecticut had jurisdiction and because of her reluctance to file an emergency petition. . . . [Daniels'] statement to the court that it was the opinion of [Davis] that an emergency application for temporary custody should not be brought in New Jersey for rea-

sons concerning the judiciary there was false. Both . . . Daniels and [the plaintiff] knew it was false.[5] . . . The statement made to the [trial] court by . . . Daniels that it was the opinion of [Davis] that an emergency petition should not be brought in New Jersey did not provide a complete picture of the opinions of . . . Davis as they related to the appropriate forum for bringing an emergency petition in this case. . . . Daniels failed to tell [the trial court] that . . . Davis believed that New Jersey had jurisdiction in this matter and that New Jersey, not Connecticut, was the appropriate forum for filing such a petition. He also neglected to inform [the trial court] that it was . . . Davis' opinion that no emergency petition should be filed at all. Finally, [Davis] did not tell [the trial court] that, despite her reservations . . . Davis was prepared to file an emergency petition on . . . Montalvo's behalf in New Jersey." (Citations omitted.)

The trial court further stated: "Had I known at the time of the ex parte proceeding the accurate and complete opinions of . . . Davis—that she believed that New Jersey had jurisdiction over any application for temporary custody, that New Jersey was the appropriate forum to file such an application, and that she was prepared to file an emergency custody petition in New Jersey, I would have instructed [Montalvo] to file her application for temporary custody in New Jersey and [would] not have granted the emergency application providing temporary custody of the two minor children to [Montalvo]." The trial court thereafter concluded that Daniels had violated rule 3.3 (a) (1) by making the false statement to the court and that the

[5] The trial court indicated in a footnote of its memorandum of decision that the plaintiff knew the statement attributed to Davis was false because he had been a party to the conversation with Davis and Daniels knew it was false because the plaintiff had told Daniels the content of his conversation with Davis.

plaintiff had violated the same rule by failing to correct that false statement when it was made to the court in his presence. Finally, the trial court determined that Daniels and the plaintiff had violated rule 3.3 (d) by failing to inform the court of all the material facts known to them regarding Davis' opinions and the steps she had taken in preparing to file an emergency petition.

Accordingly, the trial court reprimanded both Daniels and the plaintiff for their conduct, and thereafter denied their motion to reargue. Subsequently, pursuant to Practice Book § 72-1 et seq., the plaintiff and Daniels filed a writ of error to this court; see footnote 2 of this opinion; challenging the reprimand. The writ was transferred to the Appellate Court, which dismissed the writ, determining, inter alia, that the plaintiff had violated rule 3.3 (a) (1) by failing to correct the false statements made by Daniels in his presence; *Daniels* v. *Alander*, supra, 75 Conn. App. 879; and that, because the plaintiff was aware of the court's line of inquiry into the reasons why the application had not been brought in New Jersey, his failure to inform the trial court of all material facts known to him concerning the matter constituted a violation of rule 3.3 (d). Id., 880.

On appeal to this court, the plaintiff challenges the judgment of the Appellate Court affirming the trial court's determination that he had violated his professional obligations under rule 3.3 (a) (1) and (d) of the Rules of Professional Conduct. He claims that his failure to correct Daniels' false statements to the court concerning the plaintiff's own conversations with Davis cannot, as a matter of law, form the basis of a violation of rule 3.3 (a) (1). Specifically, the plaintiff argues that only the attorney who actually made the misstatement can be held accountable under the rule and that, because he personally made no such misstatements to the trial court, there was no basis upon which to con-

clude that he had violated rule 3.3 (a) (1).[6] The plaintiff also argues that the misstatement was not material to the trial court's determination of the issues at hand and that, therefore, it cannot form the basis of a violation of rule 3.3 (d). Finally, he argues that rule 3.3 (d) should not be extended to a situation in which an associate, like himself, sitting at counsel table with his employer, remains silent when that employer makes a misstatement of fact to the court.

We begin with our well settled jurisprudence regarding the authority of the judges of the Superior Court. "The trial court has the authority to regulate the conduct of attorneys and has a duty to enforce the standards of conduct regarding attorneys." *Bergeron* v. *Mackler*, 225 Conn. 391, 397, 623 A.2d 489 (1993). A trial court also has the "inherent power . . . to discipline members of the bar, and to provide for the imposition of reasonable sanctions to compel the observance of its rules." (Internal quotation marks omitted.) *Gionfrido* v. *Wharf Realty, Inc.*, 193 Conn. 28, 33, 474 A.2d 787 (1984). "[A] court disciplining an attorney does so not to punish the attorney, but rather to safeguard the administration of justice and to protect the public from the misconduct or unfitness of those who are members of the legal profession." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, 267 Conn. 1, 54, 835 A.2d 998 (2003); see also *In re Dodson*, 214 Conn. 344, 354, 572 A.2d 328 ("[t]he trial judge . . . has the duty to deter and correct misconduct of attorneys with respect to their obligations as officers of the court to support the authority of the court and enable the trial to proceed with dignity"), cert. denied sub nom. *Dodson* v. *Superior Court*, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990).

---

[6] On appeal to this court, the plaintiff does not challenge the propriety of the trial court's finding that Daniels had made a misstatement, but only whether, as a matter of law, the plaintiff can be held accountable for failing to correct the misstatement and whether the misstatement was material.

"As with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, supra, 54.

I

The plaintiff's first challenge is to the propriety of the Appellate Court's judgment affirming the trial court's determination that he violated rule 3.3 (a) (1). Essentially, he argues that because Daniels made the misstatements, only Daniels could be held accountable. According to the plaintiff, the rule, as adopted by the judges of the Superior Court, applies only to the attorney who actually makes the misstatement, and not to an attorney who simply fails to correct it. We disagree.

Rule 3.3 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall not knowingly . . . (1) [m]ake a false statement of material fact or law to a tribunal . . . ." The issue then is whether the rule applies only to misrepresentations that take the form of an affirmative statement, or whether it also can apply to misrepresentations that take the form of a failure to disclose. Turning first to the commentary to rule 3.3, which provides that "[t]here are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation," it is apparent that the drafters of rule 3.3, which is entitled "Candor toward the Tribunal," did not intend to limit its application solely to the party actually making the affirmative misstatement. Depending upon the circumstances, the rule can pertain to an attorney who fails to correct a misstatement to the court that was made in his presence by another attorney.

In this case, the words Daniels spoke pertained to a conversation that *the plaintiff* had had with Davis.

Daniels made representations to the trial court regarding that conversation that the court concluded were not truthful and that the plaintiff knew from his own personal knowledge to be false. Because the recitation by Daniels pertained to the plaintiff's firsthand knowledge of events that had occurred outside the trial court's presence, which the plaintiff personally had related to Daniels as part of their joint representation of Montalvo, the plaintiff was well situated to remedy the misstatement and thereby uphold his duty of candor to the court. Under the particular circumstances of this case, the plaintiff, as an officer of the court, was duty bound to correct the misstatement.

Instead, during the January 16, 2001 proceeding, the plaintiff introduced himself to the trial court as representing Montalvo, but then sat quietly allowing Daniels to answer questions by recounting the details of a conversation that the plaintiff had had with Davis, details that the trial court later concluded had not been reported accurately. Of even greater significance is the fact that the plaintiff had the opportunity to rectify the situation when he testified during the March 16, 2001 hearing. Rather than correct Daniels' misstatement, the plaintiff instead explicitly attested to the accuracy of the representations that Daniels had made during the January 16 ex parte hearing when the plaintiff related that, in his conversation with Davis, he had "asked if she had intended on going forward with any legal proceedings in New Jersey, based on the allegations that . . . Montalvo was making. And that is when [Davis] told [the plaintiff] that she [did not], that she was afraid any further legal proceedings of this nature would anger the judge and would compromise the outcome of the custody trial that had just taken place." Additionally, the plaintiff testified that he had repeated that conversation to Daniels and that the plaintiff had been at the January 16, 2001 hearing when Daniels made

representations to the court regarding the plaintiff's conversation with Davis, representations that the court later determined, based on Davis' testimony, to have been untruthful. During the March 16, 2001 hearing, the plaintiff was under oath and, therefore, his representations to the trial court comprised testimonial evidence so that he was obligated, both as a witness and as an attorney and officer of the court, to make truthful representations to the tribunal. See Rules of Professional Conduct 3.3. Importantly, everything that the plaintiff recounted to the trial court was within his own specific knowledge; unlike Daniels, the plaintiff was not making representations concerning the acts of third parties.

Finally, separate and apart from the obligations imposed independently by rule 3.3 (d), the very fact that this action began as an ex parte proceeding was a unique circumstance that created an enhanced duty of candor toward the trial court, which was wrestling with the threshold issue of whether to entertain the emergency custody application. Whether New Jersey counsel was prepared to proceed with an application in New Jersey or whether only a Connecticut court reasonably could address the child protection concerns that first prompted this action were at the heart of the forum issue. As the trial court noted: "The observance of [an enhanced duty of candor] is especially critical in ex parte hearings deciding the custody of children because of the fundamentally important rights at stake." That obligation is heightened even further when an attorney in an ex parte proceeding either makes false assertions or fails to correct misstatements that purport to be based on his or her own personal observations and knowledge of events that have occurred outside the court's presence. Accordingly, we conclude that the trial court's finding that the plaintiff had violated rule 3.3 (a) (1) was not improper.

## II

The plaintiff next argues that the Appellate Court improperly affirmed the trial court's determination that he had violated rule 3.3 (d). Specifically, he contends that he had no duty to disclose Davis' representations to him because they were not material. He also argues that rule 3.3 (d) should not be extended to a situation in which an associate, like himself, sitting at counsel table with his employer, remains silent when that employer makes a misstatement of fact to the court. We disagree with both assertions.

In deciding the first claim, we must remember what issues were before the trial court. In deciding the ex parte emergency custody application, the trial court first had to determine whether Connecticut had jurisdiction over the matter, and if so, whether it nevertheless should decline to exercise that jurisdiction, pursuant to General Statutes §§ 46b-115n[7] and 46b-115q,[8] in light

[7] General Statutes § 46b-115n (a) provides in relevant part: "A court of this state has temporary emergency jurisdiction if the child is present in this state and (1) the child has been abandoned, or (2) it is necessary in an emergency to protect the child because the child, a sibling or a parent has been, or is under a threat of being, abused or mistreated. . . ."

[8] General Statutes § 46b-115q provides in relevant part: "(a) A court of this state which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. . . .

"(b) In determining whether a court of this state is an inconvenient forum and that it is more appropriate for a court of another state to exercise jurisdiction, the court shall allow the parties to submit information and shall consider all relevant factors including: (1) Whether family violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; (2) the length of time the child has resided outside this state; (3) the distance between the court in this state and the court in the state that would assume jurisdiction; (4) the relative financial circumstances of the parties; (5) any agreement of the parties as to which state should assume jurisdiction; (6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child; (7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and (8) the familiarity

of the fact that a decision in a custody and visitation proceeding was pending in New Jersey. Central to the court's line of inquiry was why Montalvo did not file her application before the Superior Court in New Jersey, which already had conducted a hearing on the issue of the children's custody.

Indeed, as we previously have indicated, the trial court in the present case stated that, had it "known at the time of the ex parte proceeding the accurate and complete opinions of . . . Davis—that she believed that New Jersey had jurisdiction over any application for temporary custody, that New Jersey was the appropriate forum to file such an application, and that she was prepared to file an emergency custody petition in New Jersey, [it] would have instructed [Montalvo] to file her application for temporary custody in New Jersey and [would] not have granted the emergency application providing temporary custody of the two minor children to [Montalvo]." Therefore, the line of inquiry was *pivotal* to the issues before the trial court. See *State* v. *Gombert*, 80 Conn. App. 477, 488–89, 836 A.2d 437 (2003) ("materiality turns upon what is at *issue* in the case, which generally will be determined by the pleadings and the applicable substantive law" [emphasis in original; internal quotation marks omitted]), cert. denied, 267 Conn. 915, 841 A.2d 220 (2004); see also Conn. Code Evid. § 4-1, commentary.[9]

Lastly, the plaintiff claims that rule 3.3 (d) should not be extended to him because he was merely an

of the court of each state with the facts and issues in the pending litigation. . . ."

[9] Indeed, during the dispositional phase of the proceeding, the plaintiff "acknowledge[d] that the significance to [the court's] decision on this emergency application, to knowing as much as possible about the alternative forum. . . . So I think, Your Honor, there would be an acknowledgment." Therefore, this colloquy seriously undermines his challenge to the materiality of the representations to the trial court.

associate, sitting at counsel table with Daniels, his employer, and that therefore, remaining silent when Daniels made a misstatement of fact to the court should not serve as the basis for the reprimand. As we stated previously; see footnote 3 of this opinion; rule 3.3 (d) of the Rules of Professional Conduct provides: "In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse." As we already have concluded, the facts were material and they were known to the plaintiff. Therefore, the only question that remains is whether there is some policy reason why Driscoll should not be held accountable.

It is apparent that the trial court was examining the issues of jurisdiction, namely, whether Montalvo could obtain relief in New Jersey and whether this was a situation involving potential imminent harm to children. Therefore, the status of the proceedings in New Jersey and Davis' views and intentions were material facts known to the plaintiff that would have enabled the trial court to determine what action, if any, to take. The commentary to rule 3.3 regarding ex parte proceedings provides: "Ordinarily, an advocate has the limited responsibility of presenting one side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. However, in an ex parte proceeding, such as an application for a temporary restraining order, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision."

This is so even when such disclosures may not benefit the disclosing lawyer's position. Therefore, under the circumstances of this case, the trial court reasonably could have expected the plaintiff to inform it of Davis' views and intentions in the January 16, 2001 ex parte proceeding.

Moreover, when Daniels related Davis' observations and the plaintiff remained silent, the trial court reasonably could have inferred that it possessed all the pertinent information. Indeed, if that had not been the case, the circumstances naturally would have called for a reply. See *Obermeier* v. *Nielsen*, 158 Conn. 8, 11–12, 255 A.2d 819 (1969). The plaintiff has not presented, nor can we identify, any sound reason to graft an exception onto the rule when an attorney whose conduct is at issue is an associate joined by his employer.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.