STATE OF CONNECTICUT *v.* EDWIN J. MASKIELL
(AC 26387)

Schaller, McLachlan and Harper, Js.

Argued September 14, 2006—officially released April 10, 2007

*Richard E. Condon, Jr.,* assistant public defender, for the appellant (acquittee).

*James M. Ralls,* assistant state's attorney, with whom were *Patricia M. Froehlich,* state's attorney, and, on the brief, *Bonnie Bentley-Cewe,* assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The acquittee, Edwin J. Maskiell, appeals from the judgment of the trial court ordering his continued confinement to the psychiatric security board of review (board) pursuant to General Statutes § 17a-593. The acquittee claims that (1) the admission of the board's report to the court violated his procedural due process right of confrontation and fundamental fairness, (2) the court's reliance upon the board's report violated his right to substantive due process and (3)

the evidence did not support the court's findings. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. In September, 1985, the acquittee was charged with the crimes of sexual assault in the fourth degree and risk of injury to a child. In January, 1986, the acquittee was acquitted of these crimes by reason of mental disease or defect. See General Statutes § 53a-13. The court committed him to the jurisdiction of the board for a period not to exceed ten years. On subsequent occasions, the court granted the state's petitions for an order of continued commitment. The acquittee's maximum term of commitment was to expire on June 9, 2003.

On January 8, 2003, the state filed a petition for an order for the acquittee's continued confinement, representing that "the acquittee remains mentally ill to the extent that his discharge would constitute a danger to himself or others." Later, the board held a hearing concerning the state's petition and submitted a report to the court as required by § 17a-593 (d).[1] The board recommended that the court grant the state's petition and order commitment for a period of time not to exceed five years.

In July, 2003, the court held a hearing concerning the state's petition.[2] The state presented testimony from Vicki Wolfe, a developmental specialist associated with

---

[1] General Statutes § 17a-593 (d) provides in relevant part: "The court shall forward . . . any petition for continued commitment of the acquittee to the board. The board shall, within ninety days of its receipt of the . . . petition, file a report with the court, and send a copy thereof to the state's attorney and counsel for the acquittee, setting forth its findings and conclusions as to whether the acquittee is a person who should be discharged. The board may hold a hearing or take any other action appropriate to assist it in preparing its report."

[2] Absent objection, the acquittee filed a motion to extend his commitment until the time of the hearing. The court granted the motion.

the department of mental retardation (department), who has evaluated and treated the acquittee at the facility where he resides. The state also presented testimony from Norman Harrison, a conditional release supervisor at the facility where the acquittee resides. The acquittee presented testimony from James Welsh, the director of legal and government affairs for the department. The parties also submitted documentary evidence to the court. On the basis of the evidence presented at the hearing, the court granted the state's petition, ordering the acquittee's continued commitment for a period not to exceed five years.[3] This appeal followed. Additional facts will be set forth as necessary.

I

The acquittee's first two claims challenge the court's admission of, and reliance upon, the board's report. First, the acquittee claims that the admission of the report violated his procedural right to cross-examination and his right to fundamental fairness. Specifically, the acquittee argues that he was deprived of an opportunity to cross-examine the drafters of the report, which contained hearsay in the form of expert opinion concerning the ultimate issue. The acquittee also argues that the report was unreliable and untrustworthy, and thus inadmissible hearsay, in that the board applied

[3] Prior to the hearing, in May, 2003, the acquittee filed a motion to dismiss the petition on the ground that the state's petition was "unconstitutional in both procedure and effect." The court and the parties agreed that the dispositive issue raised in the motion would be resolved by our Supreme Court in an appeal then pending before it, State v. Long, 268 Conn. 508, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004). The court deferred ruling on the acquittee's motion to dismiss until such time as the Supreme Court released its decision in Long. The court granted the state's petition for continued commitment on July 8, 2003, noting that it left unresolved the motion to dismiss. Long officially was released on April 27, 2004. On March 7, 2005, the court granted the acquittee's motion to open the judgment and heard argument on the motion to dismiss. The court thereafter denied the motion to dismiss, and the acquittee brought this appeal. The court's denial of the acquittee's motion to dismiss is not at issue.

legal principles different from those applicable during the hearing on the state's petition, that two board members who signed the report were not present at the hearing before the board, that the record does not reflect that these board members reviewed a transcript of proceedings before the board and that, therefore, the report was not issued by a quorum of board members, as is required by board regulations. Second, the acquittee argues that, for similar reasons, the report was "so untrustworthy and unreliable" that the court's reliance upon it violated his right to substantive due process.

The court held a hearing on the state's petition on July 8, 2003. The transcript of the proceeding is not voluminous. By agreement of the parties, the court permitted the acquittee to present his sole witness before the state presented its case. At the conclusion of his witness' testimony, the acquittee rested. The state then presented testimony from two witnesses. At the conclusion of that testimony, the following colloquy between the court and the attorneys transpired:

"The Court: . . . Is there anything else that you have to present?

"[The Prosecutor]: Your Honor, the state has had marked as exhibits several documents, and in discussion with Your Honor this morning, I think, by agreement, the state was going to be marking relevant portions of those documents for Your Honor's review rather than having Your Honor go through all of those documents.

"The Court: Okay. [Counsel], is there anything else you'd like me to know about?

"[The Acquittee's Counsel]: Just briefly, Your Honor. I'd just like to address the procedural posture of how the case stands at the moment for the record.

"The Court: Okay."

The acquittee's counsel thereafter discussed the status of his motion to dismiss.[4] He did not at that time or at any later time address the court with regard to the documentary exhibits referred to by the prosecutor, which included the report at issue.[5] The documentary exhibits submitted by the state are marked as full exhibits in the court file, and the record does not reflect any objections thereto.

At the conclusion of the hearing, the court granted the state's petition in an oral ruling. The court stated that it agreed with the board's recommendations and that it found the testimony of the witnesses presented by the state to be persuasive. The court found that the acquittee suffered from certain psychological disorders and stated that it had "adopt[ed]" the board's conclusion that these disorders manifested themselves to such an extent that "these mental conditions render [the acquittee] a danger to children and greatly impair [his] ability to care for himself."

It is a well established rule of appellate practice that "[t]he court shall not be bound to consider a claim

---

[4] See footnote 3.

[5] Earlier during the hearing, the court stated that it had received and reviewed the board's report. The acquittee's counsel did not respond to the court's statements in this regard. In all continued commitment cases, the board submits its report to the court in accordance with General Statutes § 17a-593 (d). This provision also sets forth the type of information that the board is to include in the report. Although in the present case the state chose to present the report along with other documentary evidence, there is no requirement that either party in a continued commitment proceeding offer the report as evidence. Section 17a-593 (d) requires that the parties receive a copy of the report prior to a hearing on any petition for continued commitment. Thus, the court may expect the parties to be aware of the report's contents prior to any hearing. Our case law reflects that the report can be significant in the proceedings to which it pertains; the court may credit the board's opinions and rely upon its findings if it chooses to do so. *State* v. *March*, 265 Conn. 697, 712, 830 A.2d 212 (2003). Certainly, a party challenging the report in some manner, or the court's reliance upon the report, bears the burden of preserving its claim of error at trial.

unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 60-5. The acquittee acknowledges that he did not preserve the claims he now seeks to raise on appeal, and asks this court to review the claims under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The acquittee also asks this court to apply the plain error doctrine, codified in Practice Book § 60-5, to the procedural due process and fundamental fairness aspects of his claim.

"*Golding* is a narrow exception to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." *State* v. *Brunetti*, 279 Conn. 39, 55, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

"[T]he plain error doctrine, which is now codified at Practice Book § 60-5 . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . Implicit in this very demanding standard is the notion, explained previously, that invocation of the plain error doctrine is reserved for occasions requiring

the reversal of the judgment under review. . . . [Thus, a] defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 86–87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

The state argues that the doctrine of induced error applies to the acquittee's claim. "[T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional *and* induced constitutional error." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Brunetti*, supra, 279 Conn. 59 n.32; see *State* v. *Rowe*, 279 Conn. 139, 150, 900 A.2d 1276 (2006).

Our appellate courts have applied the induced error doctrine in a variety of circumstances. The doctrine has been applied in appeals in which an appellant has challenged on appeal the admissibility of evidence that it presented or elicited at trial. See, e.g., *State* v. *Smith*, 212 Conn. 593, 611, 563 A.2d 671 (1989); *State* v. *Brokaw*, 183 Conn. 29, 32–33, 438 A.2d 815 (1981); *Pineau* v. *Home Depot, Inc.*, 45 Conn. App. 248, 252–54, 695 A.2d 14 (1997), appeal dismissed, 245 Conn. 422, 713 A.2d 825 (1998); *State* v. *Harrison*, 34 Conn. App. 473, 488, 642 A.2d 36, cert. denied, 231 Conn. 907, 648 A.2d 157 (1994). The doctrine has been applied in appeals in which an appellant has challenged the admissibility of evidence or issues introduced under its own theory of the case. See, e.g., *State* v. *Caracoglia*, 95 Conn. App. 95, 122, 895 A.2d 810, cert. denied, 278 Conn. 922, 901

A.2d 1222 (2006); *State* v. *Youdin*, 38 Conn. App. 85, 98, 659 A.2d 728, cert. denied, 234 Conn. 920, 661 A.2d 100 (1995). The doctrine also has been applied to preclude review of an appellant's claim that the court prevented him from calling a witness that he, himself, chose not to call. *State* v. *Felder*, 95 Conn. App. 248, 255–56, 897 A.2d 614, cert. denied, 279 Conn. 905, 901 A.2d 1226 (2006).

The doctrine has been applied in appeals in which appellants sought review of jury instructions that they asked the trial court to deliver. See, e.g., *State* v. *Cruz*, 269 Conn. 97, 105, 848 A.2d 445 (2004); *State* v. *Schiavo*, 93 Conn. App. 290, 300, 888 A.2d 1115, cert. denied, 277 Conn. 923, 895 A.2d 797 (2006); *State* v. *Zollo*, 36 Conn. App. 718, 736, 654 A.2d 359, cert. denied, 234 Conn. 906, 660 A.2d 859 (1995); *State* v. *Murdick*, 23 Conn. App. 692, 702, 583 A.2d 1318, cert. denied, 217 Conn. 809, 585 A.2d 1233 (1991). The doctrine also has been applied in an appeal in which an appellant challenged a trial court's failure to deliver a limiting instruction after the appellant "encouraged or prompted the court to refrain from giving such an instruction despite the court's attempts to elicit from the [appellant] his permission to do so." *State* v. *Gibson*, 270 Conn. 55, 68, 850 A.2d 1040 (2004).

The doctrine also has been applied in appeals in which appellants challenged the trial court's application of legal principles or procedures that they requested be applied at trial. See, e.g., *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 90 n.9, 881 A.2d 139 (2005) (defendant cited to or relied solely upon Connecticut law before trial court and argued on appeal that trial court should have applied New York law); *State* v. *Alston*, 272 Conn. 432, 456, 862 A.2d 817 (2005) (defendant challenged jury selection process that he suggested trial court employ during trial); *E. Udolf, Inc.* v. *Aetna Casualty & Surety Co.*, 214 Conn. 741, 752, 573 A.2d 1211

(1990) (plaintiff challenged trial court's reliance upon definition it asked trial court to apply); *State* v. *DiLoreto*, 88 Conn. App. 393, 397–98, 870 A.2d 1095 (2005) (defendant asked court to preclude lay testimony concerning his intoxication and claimed on appeal that court should have admitted such testimony); *State* v. *Grenier*, 55 Conn. App. 630, 649–50, 739 A.2d 751 (1999) (defendant challenged trial court's failure to conduct in camera inspection of certain records after informing trial court that such inspection unnecessary), rev'd on other grounds, 257 Conn. 797, 778 A.2d 159 (2001). Furthermore, the doctrine has been applied in an appeal in which an appellant initially challenged the admissibility of certain evidence during trial, only to withdraw his objection later and expressly characterize the evidence as nonprejudicial. *State* v. *Edwards*, 39 Conn. App. 242, 251, 665 A.2d 611, cert. denied, 235 Conn. 924, 925, 666 A.2d 1186 (1995). In that appeal, this court recognized that the trial court's actions were based upon the actions of the appellant's attorney at trial. Id. The court stated: "For the [appellant] to claim on appeal that he was prejudiced by the admission of the evidence is trial by ambuscade." Id.

The analysis consistently applied in our decisional law asks whether the acquittee "through conduct, encouraged or prompted the trial court to make the erroneous ruling" at issue. (Internal quotation marks omitted.) *State* v. *Brunetti*, supra, 279 Conn. 59 n.32. At issue here is the court's admission of the exhibits presented by the state and its reliance upon the board's report. The state argues that the conduct implicating the doctrine is the silence on the part of the acquittee's attorney when the prosecutor represented to the court her belief that the parties had reached an agreement as to the admissibility of the state's documentary evidence. The state argues that, given the unique circumstance surrounding the silence, the acquittee "implicitly

agreed" that the documentary evidence, which included the report at issue, should be marked as full exhibits. The state essentially argues that the acquittee, having led the court to believe that the parties agreed to the court's consideration of the report, cannot be heard to challenge such consideration on appeal. The acquittee argues that the doctrine does not apply in this appeal because "the record does not demonstrate that [the acquittee's counsel] affirmatively requested introduction of the report at issue." The acquittee further argues that the prosecutor reflected equivocation as to the status of an agreement and that the acquittee's trial counsel "did not confirm that the documents were to be introduced into evidence by agreement."

The acquittee argues that, absent a showing of some affirmative conduct with regard to this evidence, the doctrine does not apply. The state argues that, under the circumstances as reflected in the record, the acquittee's silence in the face of the representations of the prosecutor constituted conduct to which the doctrine of induced error applies.

A party's failure to object precludes appellate review of some types of claims, but such failure typically does not implicate the doctrine of induced error. We are persuaded that, under the unique circumstances of the present case, the acquittee's failure to object or to in any way contradict the representations made by the prosecutor concerning the report marked by the state as an item of evidence was conduct that prompted or encouraged the court to rely upon the report; thus, it was conduct that implicated the doctrine of induced error.

Following a brief evidentiary hearing, the state and the acquittee rested their cases. The court asked the prosecutor if she wanted to present any further evidence. The prosecutor represented that the state had

marked several documents as exhibits and that, following a discussion with the court earlier that day, she believed that the parties had reached an agreement as to which documents the court should review. These exhibits included the report. The court expressed its understanding and asked the acquittee's attorney if there was "anything else" he would like the court to know about. The acquittee's attorney did not say anything about the representations of the prosecutor but addressed other matters.

Here, the court was well within its authority to accept as true the representations made by the prosecutor concerning the existence of an agreement as to the admissibility of evidence. Such agreements are not uncommon, and the court was entitled to rely upon the representations of an officer of the court concerning such matters. "[A]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 420, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000); Rules of Professional Conduct 3.3. The acquittee's counsel, acting on his behalf, had the immediate and ultimate responsibility to object to matters submitted to the court that he deemed improper. See *State* v. *Stewart*, 64 Conn. App. 340, 352, 780 A.2d 209, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001).

The representation of the prosecutor, that an agreement existed between the parties with regard to the evidence at issue, is the type of representation that logically concerns factual matters solely within the knowledge of both parties. Thus, when the prosecutor stated that the parties were in agreement, she likewise informed the court that the acquittee's attorney was in agreement with her. The court was entitled to rely upon

the silence of the acquittee's attorney in the face of this factual representation, as well as the court's own inquiry, to be conduct that indicated tacit agreement with the factual representation. For the acquittee's trial counsel to say nothing after his adversary informed the court that the parties were in agreement constituted more than a failure to object to the evidence submitted by the state; it was conduct that represented acquiescence in the matters asserted. Although they arise rarely, there are circumstances in which a court is entitled to rely upon the significance of an attorney's silence in the face of factual assertions by another attorney. See, e.g., *Daniels* v. *Alander*, 268 Conn. 320, 330, 844 A.2d 182 (2004) ("[d]epending upon the circumstances, [Rules of Professional Conduct 3.3 (a)] can pertain to an attorney who fails to correct a misstatement to the court that was made in his presence by another attorney").

Holding that a party's silence, or inaction, is a form of conduct to which the doctrine of induced error applies is not unprecedented. Several courts in other jurisdictions have defined the doctrine of invited error in such a manner that it encompasses such conduct.[6] See, e.g., *Holifield* v. *Arkansas Alcoholic Beverage Control Board*, 273 Ark. 305, 309, 619 S.W.2d 621 (1981) ("[a]ppellant cannot acquiesce in silence and raise the issue on appeal"); *McCormick* v. *State*, 74 Ark. App. 349, 354, 48 S.W.3d 549 (2001) (same); *Horton* v. *Suthers*, 43 P.3d 611, 619 (Colo. 2002) (en banc) ("[T]he doctrine

---

[6] See 5 Am. Jur. 2d 381, Appellate Review § 713 (1995) ("an appellant generally will not be heard to complain of errors that operated to his or her favor, that he or she invited, or that were the natural consequences of his or her own neglect or misconduct"). It should be noted, however, that courts in some jurisdictions will not apply the doctrine of induced error absent a showing of, for example, "affirmative conduct demonstrating a deliberate tactical choice on the part of the challenging party." *Huffman* v. *Interstate Brands Corp.*, 121 Cal. App. 4th 679, 706, 17 Cal. Rptr. 3d 397 (2004).

is not limited to cases in which a party requests that the court take a particular action and then later complains of that same action. [In contrast], [t]he doctrine applies where one party acquiesces to conduct by the court or the opposing party." [Citation omitted.]); *Vendelin* v. *Costco Wholesale Corp.*, 140 Idaho 416, 433–34, 95 P.3d 34 (2004) (holding that party's failure to object to proposed jury instructions during charging conference invited error); *Williamson* v. *Williamson*, 825 N.E.2d 33, 48 (Ind. App. 2005) ("[a] party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct") (Baker, J., concurring in part and dissenting in part); *Batterman* v. *Bender*, 809 N.E.2d 410, 412 (Ind. App. 2004) (same). Here, the record reflects that the acquittee's counsel, through his conduct, led the court to believe that the acquittee had no objection to the court's reliance upon the board's report. Having effectively stipulated that the court properly could admit and consider the report, the acquittee induced the conduct that he challenges on appeal and is thus precluded from raising such claim under the doctrine of induced error.

Having concluded that the doctrine of invited error applies, we decline to review the claim under *Golding*. Review of induced, unpreserved error is impermissible under *Golding*. *State* v. *Cruz*, supra, 269 Conn. 106. The acquittee also asks this court to apply the plain error doctrine to the procedural due process and fundamental fairness aspects of his claim. Although it does not adequately support the proposition, the state posits that plain error "review" is "inappropriate" because the acquittee induced the claimed error. This court has evaluated under the plain error doctrine claims of error that pertained to induced error; see *State* v. *Grenier*, supra, 55 Conn. App. 651; and has explicitly rejected the state's contention. *State* v. *Cruz*, 75 Conn. App. 500,

507 n.8, 816 A.2d 683 (2003), aff'd, 269 Conn. 97, 848 A.2d 445 (2004). In *State* v. *Alston,* supra, 272 Conn. 455–56, an appellant asked our Supreme Court to apply the plain error doctrine to a claim of error that the court had determined to be induced error. Our Supreme Court noted the general principle that "actions that are induced by a party cannot be grounds for appealable error; therefore, they do not merit review." Id., 456. Yet, the court concluded that no plain error existed on the ground that the appellant "failed to demonstrate manifest injustice . . . ." Id. On the basis of our review of the record, the acquittee has not demonstrated that an error exists that is so obvious that it affects the fairness and integrity of and the public confidence in the judicial proceedings or that he has been made to suffer manifest injustice. To the extent that we consider the claim under the plain error doctrine, we are not persuaded that such error exists.

## II

The acquittee next claims that the evidence did not support the court's findings. We disagree.

In this continued commitment proceeding, the state bore the burden of proving "by clear and convincing evidence that the acquittee is currently mentally ill and dangerous to himself or herself or others or gravely disabled." *State* v. *Metz,* 230 Conn. 400, 425, 645 A.2d 965 (1994). "The determination as to whether an acquittee is currently mentally ill to the extent that he would pose a danger to himself or the community if discharged is a question of fact and, therefore, our review of this finding is governed by the clearly erroneous standard. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed

. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Corr*, 87 Conn. App. 717, 722, 867 A.2d 124, cert. denied, 273 Conn. 929, 873 A.2d 998 (2005).

In its oral ruling, the court stated that it found the testimony of Wolfe and Harrison to be "very credible." The court noted that it had reviewed the board's report and that it adopted the board's findings that the acquittee suffered from "pedophilia, sexually attracted to males and females, nonexclusive type, mild mental retardation and paranoid personality disorder with antisocial traits . . . ." The court stated: "[T]hese mental conditions render [the acquittee] a danger to children and greatly impair [his] ability to care for himself. Indeed, all of the testimony suggests that [the acquittee] is able to function with enormous supervision and structure, and even with that supervision and structure, there is some element in his own mind that he is likely to reoffend." The court thereafter granted the state's petition.

The acquittee first claims that the court's finding that his mental condition greatly impaired his ability to care for himself provided "an insufficient basis upon which to continue [his] commitment." The acquittee argues that the court could have continued his commitment had it found properly that he was gravely disabled but that the evidence did not support such a finding in this case. We need not reach the merits of this aspect of the acquittee's claim because the court did not explicitly find that the acquittee was gravely disabled. Instead, the court unambiguously found that the acquittee posed a danger to children that warranted his continued commitment. Such finding, standing alone, provided an adequate factual basis for the court's judgment.

The acquittee also claims that the evidence did not support the court's finding that he posed a danger to himself or others such that his continued commitment

was warranted. The acquittee argues that the evidence demonstrated that at the time of the hearing, he was placed voluntarily in the custody of and under the control of the department of mental retardation and had been living in a residential facility operated by that department, Durant House. The acquittee argues that the evidence permitted a finding that he "does not present a risk of danger to himself of others while under [the department's] auspices and while residing at Durant House." The acquittee further argues that the evidence reflected that the board permitted him to reside at Durant House, where he receives care and treatment provided by the department. Finally, the acquittee argues that the evidence permitted a finding that if the court had terminated the board's jurisdiction over him, his status as a voluntary admittee with the department, as well as his residency at Durant House, would not cease and that he would continue to remain under the department's jurisdiction where he would not pose a danger to anyone.

The evidence supports the acquittee's assertion that, at the time of the hearing, the acquittee had been living voluntarily at Durant House, under the care and custody of the department, while under the jurisdiction of the board. The acquittee presented the testimony of Welsh, the director of legal and government affairs for the department, who testified concerning the acquittee's status within the department as well as the manner in which the department works with the board in providing care for persons, such as the acquittee, who are under board jurisdiction and are served by the department.

The acquittee's claim finds no support in logic or in the law. He argues that continued commitment is unwarranted because the evidence permitted a finding that he would continue to receive his current level of treatment and care from the department, on a voluntary

basis, if such commitment were terminated. As a preliminary matter, the acquittee does not challenge, in any manner, the court's findings concerning the nature of his mental disabilities. The issue before the court was whether the state proved by clear and convincing evidence that the acquittee's mental disability caused him to be a danger to himself or to others or caused him to be gravely disabled. In the present case, there was ample evidence to support the court's finding that the acquittee posed a significant danger to children as a result of his pedophilia, and the acquittee does not appear to challenge this finding. That there was evidence that the acquittee was willing to remain voluntarily in department custody, where he would continue to receive a significant level of supervision and treatment designed to prevent him from harming himself or others, in no way detracted from the evidence demonstrating that the acquittee continued to pose a danger to children such that his continued commitment was warranted. Accordingly, this claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.